**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**TIMOTHY C. GRAY, individually and by and
through Lolettha Gray as Conservator for the Estate
of Timothy C. Gray**                                                                                  **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO. 2:11-CV-128-KS-MTP**

**BORDER EXPRESS SERVICES, LTD, et al.**                                           **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants in part and denies in part** Plaintiff's Motion for Rehearing [28]. The Court **grants** the motion with respect to the Court's decision to not consider evidence that Dwight Gray was intoxicated at the time of the accident which is the subject of this lawsuit.

However, the Court **denies** the motion with respect to Plaintiff's request that the Court remand this matter. The Court finds that Plaintiff fraudulently joined Dwight Gray and the Estate of Dwight Gray in an attempt to defeat the jurisdiction of this Court. Specifically, the Court finds that Plaintiff's counsel colluded with the Estate's counsel to join the Estate as a Defendant in this matter solely for the purpose of destroying diversity of citizenship. Accordingly, the Court **dismisses without prejudice** Plaintiff's claims as to Dwight Gray and the Estate of Dwight Gray.

Plaintiff's request that the Court certify its previous decision for interlocutory appeal is moot, as that decision shall be replaced by this one.

### I. BACKGROUND

According to Plaintiff's Complaint, Plaintiff was a passenger in an automobile being operated by Defendant Dwight Gray. Their vehicle was involved in a collision with a tractor-trailer

operated by Defendant Gerald D. Klassen and owned by Defendant Border Express Services, Ltd. ("Border Express").[1] Dwight Gray was killed, and Plaintiff was injured.

Plaintiff filed the present action in the Circuit Court of Covington County, Mississippi, naming Dwight Gray, the Estate of Dwight Gray ("the Estate"), Klassen, and Border Express as Defendants. Plaintiff alleges that Defendants' negligence caused his injuries, and he seeks monetary damages. Border Express removed the case to this Court, and Plaintiff filed Motions to Remand.

The Court denied Plaintiff's motions, observing that the Fifth Circuit's improper joinder analysis requires the Court to first conduct a Rule 12(b)(6) analysis and "determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). In cases where the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the Court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Therefore, the Court examined Plaintiff's complaint and determined that Plaintiff had failed to allege sufficient facts to state a claim as to Defendant Dwight Gray. Accordingly, the Court held that it was not permitted to pierce the pleadings and consider evidence that Gray was intoxicated at the time of the accident.

Plaintiff filed a Motion for Rehearing or to Certify for Interlocutory Appeal [28], which the Court now addresses.

## II. DISCUSSION

*A.    Standard of Review*

The Court construes Plaintiff's motion as one seeking reconsideration of the Court's previous

---

[1] Plaintiff also named Radiant Logistics Global Services, Inc. as a Defendant, but its citizenship and involvement in the events leading to this case are not pertinent to the resolution of the present motion.

order. Motions for reconsideration are either addressed under Rule 59(e) or Rule 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). The timing of the motion determines which rule applies. *Id.* It has been the practice in this jurisdiction that motions for reconsideration filed within ten days of the order of which reconsideration is sought are considered under Rule 59(e), and anything filed after that point is considered under Rule 60(b). *Id.* However, the deadline for filing Rule 59(e) motions was increased to twenty-eight days. *See* FED. R. CIV. P. 59(e). Therefore, a motion for reconsideration filed and served within twenty-eight days of the filing of the order to be reconsidered is reviewed under Rule 59(e), while anything filed and served after that is reviewed under Rule 60(b). *See Yarrito v. United States*, No. 5:11-CV-44-DCB-JMR, 2011 U.S. Dist. LEXIS 52312, at *1 (S.D. Miss. May 16, 2011); *Gunn v. City of Cleveland*, No. 2:09-CV-114-MPM, 2011 U.S. Dist. LEXIS 83927, at *3-*4 (N.D. Miss. July 29, 2011).

Plaintiff filed his motion for reconsideration within twenty-eight days of the Court's order denying his motion to remand. Accordingly, Rule 59(e) applies. Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence and is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Knight v. Kellogg Brown & Root Inc.*, 333 F. App'x 1, 8 (5th Cir. 2009); *see also Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Granting a Rule 59(e) motion is "an extraordinary remedy," and it "should be used sparingly." *In re Pequeno*, 240 F. App'x 634, 636 (5th Cir. 2007).

The Court has "considerable discretion" when considering Rule 59(e) motions. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). However, its discretion is not limitless, and it should be exercised with two "important judicial imperatives" in mind: "1) the need to bring

litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479. There are three grounds for altering or amending a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Williamson Pounders Architects, P.C.*, 681 F. Supp. 2d 766, 767 (N.D. Miss. 2008).

Plaintiff has not cited an intervening change in the controlling law or any new evidence previously unavailable to him. Accordingly, the Court assumes that he argues that the Court should amend its previous order to correct a clear error of law or prevent manifest injustice. Before litigants file a Rule 59(e) motion on this basis, they "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

**B.     *Piercing the Pleadings***

The first issue the Court will address is whether it should have pierced the pleadings to consider the undisputed evidence that Dwight Gray was intoxicated at the time of the accident.[2] The Fifth Circuit's jurisprudence on this issue is somewhat ambiguous. In *Smallwood*, the Fifth Circuit held:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant, which stated differently means that there is no reasonable basis for the court to predict that the plaintiff might be able to recover against an in-state defendant. To reduce

---

[2] In his briefing, Plaintiff's counsel rather boldly stated that the undersigned "has not hesitated" to consider summary judgment-type evidence "when it benefitted the defendant," implying that the Court alters its analysis to favor some parties over others. Without belaboring the point, these comments are not only inaccurate, but they are also highly unprofessional. Plaintiff's counsel demeans himself and his profession by writing them, and he would better serve his clients by omitting such comments from future pleadings.

> possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.
>
> There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis for recovery under state law. A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.
>
> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004). Therefore, *Smallwood* clearly provides that a district court may only pierce the pleadings if the plaintiff's complaint contains sufficient facts to state a valid claim for relief as to the in-state defendant. Other Fifth Circuit decisions contain similar language.[3]

In contrast, the Fifth Circuit has also held:

> To determine whether the district court correctly denied a motion to remand because the plaintiff improperly joined a nondiverse defendant to defeat subject matter jurisdiction, the court must analyze whether (1) there is actual fraud in pleading jurisdictional facts or (2) the plaintiff is unable to establish a cause of action against the nondiverse defendant. The doctrine of improper joinder is a narrow exception to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a heavy one. Under the second prong (inability to establish a cause of action), the court must determine whether there is arguably a reasonable

---

[3]*See e.g. Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006); *Guillory v. PPG Indus.*, 434 F.3d 303, 309 (5th Cir. 2005); *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 F. App'x 911, 915-16 (5th Cir. 2009); *Smith v. Petsmart, Inc.*, 278 F. App'x 377, 379 (5th Cir. 2008); *Berry v. Hardwick*, 152 F. App'x 371, 374-75 (5th Cir. 2005); *Kemp v. CTL Distrib.*, No. 10-31132, 2011 U.S. App. LEXIS 16345, at *11 (5th Cir. 2011).

>basis for predicting that state law might impose liability. This means that there must be a reasonable possibility of recovery, not merely a theoretical one. Further, the standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may pierce the pleadings and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim. In conducting this inquiry, the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. In addition, the Court must resolve all ambiguities of state law in favor of the non-removing party.

*Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citations and punctuation omitted). Therefore, *Campbell* apparently holds that a district court may, at its discretion, elect to pierce the pleadings regardless of whether the complaint states a valid claim for relief as to the in-state defendant. Again, other Fifth Circuit decisions echo this language.[4]

Accordingly, substantial authority exists to support either side of this issue. The Court concludes, however, that it should have pierced the pleadings and considered the undisputed evidence that Dwight Gray was intoxicated at the time of the accident, regardless of Plaintiff's failure to allege sufficient facts to make out a claim for relief against him. First, the most recently published Fifth Circuit decisions do not expressly limit the district courts' ability to pierce the pleadings to cases in which the plaintiff has adequately plead a cause of action as to the in-state defendant. *See Berry*, 558 F.3d at 385; *Campbell*, 509 F.3d at 669.

Second, all of the decisions cited above emphasize the district courts' discretion when it comes to piercing the pleadings. Although it is certainly debatable whether that discretion encompasses cases where the plaintiff failed to plead sufficient facts to state a claim for relief

---

[4]*See 1994 Exxon Chem. Fire v. Berry*, 558 F.3d 378, 385 (5th Cir. 2009); *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010).

against the in-state defendant, the general emphasis on the district courts' discretion may indicate greater flexibility than the wording of *Smallwood* apparently allows.

Third, the Court's primary concern when conducting an improper joinder analysis is whether there is a "reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Momentarily setting aside Defendant's argument regarding the insolvency of Gray's Estate, it is clear that there is a reasonable basis for the Court to predict that Plaintiff might be able to recover against Gray's Estate. *See Jackson v. Daley*, 739 So. 2d 1031, 1036-37 (Miss. 1999) (violation of the DUI statute which caused injury establishes negligence as a matter of law); *Williams v. State*, 137 So. 106, 107 (Miss. 1931).

Fourth, if the Court had actually been addressing a 12(b)(6) motion as to the Estate – setting aside the jurisdictional issues – it probably would have given Plaintiff an opportunity to amend the complaint to avoid dismissal. *See e.g. Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 U.S. Dist. LEXIS 23975, at *39-*40 (S.D. Miss. Feb. 3, 2011) (". . . it is generally appropriate to permit plaintiffs an opportunity to correct jurisdictional defects in their complaint.") (citing multiple cases).

Finally, "any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). As the Court explained above, it is unclear whether district courts, when conducting an improper joinder analysis, are permitted to pierce the pleadings in cases where the plaintiff pled insufficient facts to make out a plausible claim for relief as to the in-state defendant. When considering a motion to remand, the Court generally resolves all doubts in favor of remand. *Id.* The Court should do so in this case.

For all the reasons stated above, the Court **grants** Plaintiff's Motion for Rehearing [28] insofar as Plaintiff requests that the Court reconsider its decision to not consider the undisputed

evidence that Dwight Gray was intoxicated at the time of the accident. The Court should have pierced the pleadings and considered the evidence. As stated above, it provides a reasonable basis for the Court to predict that Plaintiff might recover against Gray's Estate. *Jackson*, 739 So. 2d at 1036-37; *Williams*, 137 So. at 107. This ruling, however, does not conclude the matter. The Court must now address two issues previously raised by Defendant which have bearing on the Court's jurisdiction. The parties briefed these issues prior to the Court's prior decision, but there was previously no need to address them.

### C.     *Insolvency of Gray's Estate*

Border Express previously argued that Gray's Estate is merely a nominal defendant because it is insolvent and Plaintiff is incapable of collecting any award of damages from it. Accordingly, Border Express contends that the Court should disregard the Estate's citizenship for purposes of determining whether the parties are completely diverse. There is some support for this view, and the Court is certainly mindful of it. *See e.g. Inman Const. Corp. v. S. Pilot Ins. Co.*, No. 4:06-CV-169-P-B, 2007 U.S. Dist. LEXIS 41239, at *5-*6 (N.D. Miss. June 5, 2007); *Stuckey v. Ill. Cent. R.R. Co.*, No. 2:96-CV-47-B-A, 1996 U.S. Dist. LEXIS 21379, at *8 n. 2 (N.D. Miss. June 5, 1996). It has also been noted, though, that while "the advance of an injured party's economic interests is a goal of the law . . ., it is not the only goal." *Wise v. Ill. Cent. R.R. Co.*, No. 2:08-CV-259-MPM, 2009 U.S. Dist. LEXIS 105453, at *5 (N.D. Miss. Nov. 12, 2009). Injured parties may also seek mere vindication in court. *Id.*

Furthermore, the Court can not conclusively find that the Estate is insolvent. Ramona Steele, the administratrix of the Estate, represented in her Petition for Appointment that Dwight Gray's personal property was worth no more than $1,000.00, but during her deposition she stated that she

had no idea what personal property he had owned. She further testified that she had not done any research whatsoever as to his financial status. All that she knew was that he owed her over $6,000.00 in back child support. At the time of the deposition, no money had come into the Estate, and Steele was not aware of anyone who owed it money. She was also not aware of any automobile liability insurance policy held by Dwight Gray. However, Lolettha Gray testified that Dwight Gray had inherited real property from his father.

As the above evidence demonstrates, the record is far from clear as to whether the Estate was actually insolvent. Regardless, the pertinent question in an improper joinder analysis is whether Plaintiff can establish a cause of action against Gray's estate – not whether he could actually collect on a judgment in his favor. *Campbell*, 509 F.3d at 669. For all these reasons, the Court rejects Border Express's argument that the Estate's alleged insolvency – by itself – is sufficient reason to disregard it for purposes of determining whether the parties are diverse.

### D.    *Collusion*

Border Express also previously argued that the conduct of the administratrix of Gray's Estate and Plaintiff's counsel throughout the history of this matter establishes that Plaintiff included the Estate as a defendant for the sole purpose of defeating this Court's diversity jurisdiction. Of course, it is well-established that the Court may deny a motion to remand if it finds that a resident defendant was joined "without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal." *Joe v. Minn. Life Ins. Co.*, 272 F. Supp. 2d 603, 605 (S.D. Miss. 2003) (citing *Wilson v. Republic Iron & Steel, Co.*, 257 U.S. 92, 99, 66 L. Ed. 144, 42 S. Ct. 35 (1921)). Border Express has the burden of proving that Gray's Estate is a "sham defendant." *Smallwood*, 385 F.3d at 575. The Court finds that Border Express has met

9

its burden. The evidence in the record is sufficient to establish that Plaintiff joined the Estate of Dwight Gray solely to defeat this Court's jurisdiction, that Plaintiff has no intention of pursuing his claims as to the Estate, and that Plaintiff's counsel has colluded with the Estate's counsel to destroy the complete diversity of parties in this matter.

Plaintiff was the second cousin of Dwight Gray, the deceased driver of the subject vehicle. Ramona Steele is the mother of Dwight Gray's son and the administratrix of his Estate. The subject accident occurred on May 25, 2010. Steele hired Oby Rogers, who is a counsel of record for Plaintiff in this matter, to represent Dwight Gray's Estate two days later – on May 27, 2010. She and Rogers executed a contingency fee contract in which he agreed to represent her. On June 16, 2010 – after having entered into a fee agreement with the Estate – Oby Rogers filed the Complaint in the present matter on behalf of Plaintiff against the Estate (and Border Express) in the Circuit Court of Covington County, Mississippi.

At some point prior to June 18, 2010,[5] Steele had a conference call with Rogers and an attorney named Rance Ulmer, in which Rogers introduced Steele to Ulmer. Rogers also apparently represented to Steele that he could not represent her any longer because of a conflict of interest.[6] On June 18, 2010, Ulmer filed a Petition for Appointment of Administratrix and Issuance of Letters of

---

[5] The record is unclear as to when this call took place, but it had to be prior to June 18, 2010, as that is the date of the first pleading filed by Ulmer on behalf of the Estate. Of course, the Court assumes that Ulmer would not file a pleading on behalf of a client to whom he has never been introduced. That may be a precarious assumption, as Steele testified that she first met Ulmer face-to-face at her deposition on August 3, 2011 – over a year after he allegedly became her attorney.

[6] The record is unclear as to whether Rogers made this disclosure during the conference call in which he introduced Steele to Ulmer. Nonetheless, Plaintiff argues that the two events occurred during the same conversation, and the Court will assume that is true for purposes of determining the present issue.

Administration in the Chancery Court of Covington County, Mississippi, on Steele's behalf. However, Plaintiff testified that Rogers was her attorney when she signed the June 18 Petition, and that she signed it at Rogers' office after he explained it to her. Ten days later, the Chancery Court appointed Steele as administratrix of the Estate with an order that was prepared by Ulmer.

On June 29, 2010, Steele filed a Petition for Approval of Legal Contract in the Chancery Court, asking the Court to approve the contingency fee contract she entered into with Rogers. The June 29 Petition was filed on Steele's behalf by Ulmer, despite the fact that it asks the Court to approve her contingency fee contract with Rogers. The Chancery Court entered an order granting the Petition for Approval of Legal Contract on June 29, 2010.

On June 30, 2010, the Chancery Court granted an *ore tenus* motion by Steele, authorizing her to file an answer and counterclaim in this matter. The Chancery Court's order was prepared by Rance Ulmer. The Estate's proposed answer contains cross-claims against Border Express which are virtually identical in wording and substance to Plaintiff's claims against Border Express.

On October 11, 2010, the Chancery Court issued a subpoena duces tecum in the Estate proceeding, ordering Covington County 911 to produce certain documents to the offices of Oby Rogers.

The sequence of events described above is perplexing, to say the least. Plaintiff argues that it is not unusual for conflicts of interest to arise after a party has hired counsel. However, the evidence presented to the Court does not indicate that this is such a situation. Although there is no "smoking gun" indicating that Plaintiff, the Estate, and their counsel have conspired to perpetrate a fraud on this Court, forum manipulation may be inferred from circumstantial evidence. *Joe v. Minn. Life Ins. Co.*, 257 F. Supp. 2d 845, 849-50 (S.D. Miss. 2003) (where resident defendant's

counsel had no explanation for his failure to assert obvious and valid defenses, and resident defendant used his answer to assail fellow defendants, court concluded that the resident defendant was fraudulently joined to prevent removal). Defendants have presented sufficient circumstantial evidence to permit such an inference.

First, Plaintiff has presented no explanation whatsoever for the following sequence of events: 1) Rogers entered into a contingency fee agreement with Steele to represent the Estate; 2) Rogers filed a lawsuit against the Estate on behalf of Plaintiff; 3) Rogers assisted Steele in filing a petition with the Chancery Court to have her appointed as administratrix; 4) the Estate sought the Chancery Court's approval of the contingency fee agreement between Steele and Rogers, despite the fact that Rogers allegedly no longer represented the Estate and had filed a lawsuit against it on behalf of Plaintiff; and 5) Rogers had the Chancery Court issue a subpoena in the Estate matter.

If Rogers did not realize that he had a conflict of interests until after he had agreed to represent the Estate, why did the Estate seek the Chancery Court's approval of the contingency fee agreement between Rogers and Steele? Why did Ulmer file a pleading to ratify a contingency fee agreement between Rogers and Steele when Ulmer was allegedly representing the Estate? Furthermore, why did Rogers assist Steele in filing a petition with the Chancery Court and in having a subpoena duces tecum issued if he no longer represented her? These are questions which Plaintiff could have attempted to answer with affidavits from Rogers and Ulmer, but Plaintiff has conspicuously failed to present any evidence or explanation as to these issues.

There are various other pieces of circumstantial evidence which contribute to the Court's conclusion that Plaintiff's counsel colluded with the Estate's counsel to name the Estate as a sham defendant in this matter. Ulmer allegedly represents the Estate of Dwight Gray, but Steele first met

Ulmer face-to-face at her deposition on August 3, 2011 – over a year after he allegedly began representing her. Steele was wholly unaware that Timothy Gray had filed the present lawsuit against the Estate until she received a subpoena to appear for a remand-related deposition, despite the fact that she had previously sought the Chancery Court's approval to file an answer in this case. The proposed answer included cross-claims against Border Express which are virtually identical in wording to Plaintiff's claims against Border Express, and the Estate has never filed the proposed answer. Indeed, the record does not contain any evidence that Plaintiff served the Estate with process, and no attorney has appeared on the Estate's behalf – not even to file a motion to dismiss for failure to serve.

In conclusion, the Court does not have direct evidence that Plaintiff's counsel colluded with the Estate's counsel to destroy the Court's jurisdiction, but the circumstantial evidence cited above is sufficient to demonstrate forum manipulation. *See Joe*, 257 F. Supp. 2d at 849-50 (where resident defendant's counsel had no explanation for his failure to assert obvious and valid defenses, and resident defendant used his answer to assail fellow defendants, court concluded that the resident defendant was fraudulently joined to prevent removal); *Davis v. Merck & Co.*, 357 F. Supp. 2d 974, 979 (E.D. Tex. 2005) (where plaintiff's counsel missed a state court discovery deadline – the first step under state law to prosecute claims as to the resident defendant – either intentionally or with conscious indifference, there was sufficient evidence to find forum manipulation, despite no direct evidence). Defendant presented undisputed evidence that Plaintiff's counsel, Oby Rogers, has actively represented both Plaintiff and the resident Defendant, the Estate of Dwight Gray, with

13

respect to the subject accident.[7] Rance Ulmer apparently played the role of a straw man, as evidenced by the striking similarity between the Estate's cross claims against Border Express and Plaintiff's claims against Border Express. Furthermore, Plaintiff has not served the Estate with process in this matter, and the Estate has not appeared to assert the obvious defense of Plaintiff's failure to serve.

For all the reasons stated above, the Court finds that Defendants Dwight Gray and the Estate of Dwight Gray were fraudulently joined as sham defendants solely for the purpose of defeating this Court's diversity jurisdiction. The evidence indicates that Plaintiff has no intention of prosecuting his claim as to them in this action. Accordingly, the Court dismisses Plaintiff's claims as to Dwight Gray and the Estate of Dwight Gray without prejudice.

### III. CONCLUSION

For the reasons stated below, the Court **grants in part and denies in part** Plaintiff's Motion for Rehearing [28]. The Court **grants** the motion with respect to the Court's decision to not consider evidence that Dwight Gray was intoxicated at the time of the accident which is the subject of this lawsuit.

However, the Court **denies** the motion with respect to Plaintiff's request that the Court

---

[7]Indeed, Rogers' conduct may violate the ethical rules which govern attorneys appearing before this Court. Any attorney appearing before the Court "is bound by the provisions of the Mississippi Rules of Professional Conduct and is subject to discipline for violating them." L.U.Civ.R. 83.5. Rule 1.7 of the Mississippi Rules of Professional Conduct provides that a lawyer shall not represent a client if that representation will be directly adverse to another client or if the representation will be materially limited by the lawyer's responsibilities to another client, unless the lawyer reasonably believes that the representations will not adversely affect one another and each client has given knowing and informed consent after a consultation which includes an explanation of the implications of the representation and the advantages and risks involved.

remand this matter. The Court finds that Plaintiff fraudulently joined Dwight Gray and the Estate of Dwight Gray in an attempt to defeat the jurisdiction of this Court. Specifically, the Court finds that Plaintiff's counsel colluded with the Estate's counsel to join the Estate as a Defendant in this matter solely for the purpose of destroying diversity of citizenship. Accordingly, the Court **dismisses without prejudice** Plaintiff's claims as to Dwight Gray and the Estate of Dwight Gray.

Plaintiff's request that the Court certify its previous decision for interlocutory appeal is moot, as that decision is replaced by this one.

SO ORDERED AND ADJUDGED this 3rd day of January, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE